IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

DEBRA CRAIG, )
)
    Plaintiff, )
)
v. ) Case No. CIV-19-441-SM
)
ANDREW M. SAUL, )
Commissioner of Social )
Security Administration, )
)
    Defendant. )

## MEMORANDUM OPINION AND ORDER

Debra Craig (Plaintiff) brings this action for judicial review of the Commissioner of Social Security's final decision that she was not "disabled" under the Social Security Act. See 42 U.S.C. §§ 405(g), 1382c(a)(3)(A). The parties have consented to the undersigned for proceedings consistent with 28 U.S.C. § 636(b)(1)(B) and (C). Docs. 12, 16.

Plaintiff maintains the ALJ erred by not including handling and fingering limitations in the residual functional capacity[1] (RFC) assessment, improperly analyzing the opinion of a mental health counselor, and not properly considering the impact of Plaintiff's obesity. Doc. 19, at 4-10. After a careful review of the record (AR), the parties' briefs, and the relevant authority,

---

[1] Residual functional capacity "is the most [a claimant] can still do despite [a claimant's] limitations." 20 C.F.R. § 404.1545(a)(1).

the court reverses and remands the Commissioner's decision. *See* 42 U.S.C. § 405(g).[2]

I. **Administrative determination.**

A. **Disability standard.**

The Social Security Act defines "disability" as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). "This twelve-month duration requirement applies to the claimant's inability to engage in any substantial gainful activity, and not just h[er] underlying impairment." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citing *Barnhart v. Walton*, 535 U.S. 212, 218-19 (2002)).

B. **Burden of proof.**

Plaintiff "bears the burden of establishing a disability" and of "ma[king] a prima facie showing that [s]he can no longer engage in h[er] prior work activity." *Turner v. Heckler*, 754 F.2d 326, 328 (10th Cir. 1985). If Plaintiff makes that prima facie showing, the burden of proof then shifts to the

---

[2] Citations to the parties' pleadings and attached exhibits will refer to this Court's CM/ECF pagination. Citations to the AR will refer to its original pagination.

2

Commissioner to show Plaintiff retains the capacity to perform a different type of work and that such a specific type of job exists in the national economy. *Id.*

## C. Relevant findings.

### 1. Administrative Law Judge's findings.

The ALJ assigned to Plaintiff's case applied the standard regulatory analysis to decide whether Plaintiff was disabled during the relevant timeframe. AR 524-32; *see* 20 C.F.R. § 416.920(a)(4); *see also Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) (describing the five-step process). The ALJ found Plaintiff:

(1) had not engaged in substantial gainful activity since October 7, 2011, the application date;

(2) had the severe impairments of obesity, hypertension, back disorder, chronic pain syndrome, bilateral carpal tunnel syndrome, bilateral cubital tunnel syndrome, osteoarthritis of the right knee post status post tendon repair, fatty liver disease, restless leg syndrome, binge eating disorder, GAD, PTSD, and depression;

(3) had no impairment or combination of impairments that met or medically equaled the severity of a listed impairment;

(4) had the RFC to perform light work, with additional nonexertional restrictions, including a restriction to frequent handling and fingering;

(5) could perform jobs that exist in significant numbers in the national economy (routing clerk, deli slicer, and solder-dipper); and thus

(6) has not been under a disability since October 7, 2011.

3

AR 524-39.

### 2. Appeals Council's findings.

Because this Court previously remanded Plaintiff's case for further consideration, *id.* at 611-28, and the SSA's Appeals Council did not assume jurisdiction, *id.* at 512, the ALJ's decision is the final decision. *Id.* at 513; 20 C.F.R. § 416.1484(a).

## II. Judicial review of the Commissioner's final decision.

### A. Review standard.

The court reviews the Commissioner's final decision to determine "whether substantial evidence supports the factual findings and whether the ALJ applied the correct legal standards." *Allman v. Colvin*, 813 F.3d 1326, 1330 (10th Cir. 2016). Substantial evidence is "more than a scintilla, but less than a preponderance." *Lax*, 489 F.3d at 1084; *see also Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) ("It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.") (internal quotation marks and citation omitted). A decision is not based on substantial evidence "if it is overwhelmed by other evidence in the record." *Wall*, 561 F.3d at 1052 (citation omitted). The court will "neither reweigh the evidence nor substitute [its] judgment for that of the agency." *Newbold v. Colvin*, 718 F.3d 1257, 1262 (10th Cir. 2013) (quotation marks and citation omitted).

B. **Issues for judicial review.**

Plaintiff maintains the ALJ's RFC assessment failed to account for all of her limitations related to the use of her hands and arms. Doc. 19, at 4-7. She further contends the ALJ erred in his reconsideration of mental health counselor Trendolyn Brown, LBP's opinion and his consideration of the impact of Plaintiff's obesity. *Id.* at 7-10.

The court finds the ALJ erred in his consideration of Ms. Brown's opinion because he ignored evidence central to the reasons given for assessing little weight to it. The court also finds the ALJ did not err with regard to Plaintiff's handling and fingering limitations or in considering Plaintiff's obesity.

### III. Analysis

A. **Issues related to Ms. Brown's opinion.**

1. **Other source opinion review standard.**

Plaintiff contends the ALJ erred in evaluating the opinion of Trendolyn Brown. *Id.* at 8-9. Although Plaintiff frames the issue as "an improper attempt at dismissing a treating opinion," *id.* at 8, Ms. Brown is a Licensed Behavioral Practitioner and Licensed Drug and Alcohol Counselor. *See* AR 320. Neither position is considered an "acceptable medical source," but both are "other sources." *See* SSR 06-03p, 2006 WL 2329939 at *1-2 (Aug. 6, 2006). "Other sources" include both "medical sources who are not 'acceptable medical sources' and 'non-medical sources.'" *Id.* An ALJ should still explain the weight given

to opinions from other sources, but an ALJ's evaluation of an opinion from nonacceptable medical source "is sufficient if it permits us to 'follow the adjudicator's reasoning.'" *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1163-64 (10th Cir. 2012) (quoting SSR 06-03p, 2006 WL 2329939, at *6); *accord Carr v. Comm'r*, 734 F. App'x 606, 609 (10th Cir. 2018); *see also* SSR 06-03p, 2006 WL 2329939, at *6 ("[T]he adjudicator generally should explain the weight given to opinions from these 'other sources,' or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning . . . ."). The court analyzes the ALJ's consideration of Ms. Brown's opinion under this framework.

### 2. Ms. Brown's opinion.

The ALJ summarized a January 2012 narrative report and a November 2012 mental RFC statement prepared by Ms. Brown. AR 531-32. In the summary, the ALJ stated that "there are no treatment notes in evidence from this source" and Ms. Brown "indicates [Plaintiff] was in care there beginning in April 2008, but the first record in evidence is dated January 2012 . . . ." *Id.* at 531.

> Later in the decision, the ALJ addressed Ms. Brown's opinions:
>
> Little weight is given to the November 2012 opinion by Trendolyn Brown, LBP, because there are no accompanying contemporaneous treatment notes, and it is not consistent with other medical evidence of record. Ms. Brown does not have the credentials of a Ph. D. [sic] or Psy.D., or M.D., which are the

6

acceptable medical sources for purposes of diagnosis. The 2012 narrative report has been considered. It does not provide longitudinal perspective on [Plaintiff's] treatment and outcomes. To the extent that it is not consistent with the psychiatric notes by Holloway Group, it is given less weight than those serial mental status exam findings and GAF scores.

*Id.* at 536 (record citations omitted).

### 3. The ALJ did not consider all of the evidence.

Contrary to the ALJ's reasoning, Plaintiff contends there were contemporaneous treatment notes in the record. Doc. 19, at 8 (citing AR 1038-54). These records include an "Admission/Screening/Intake Information/Biophyschosocial Assessment"—which includes a one paragraph narrative and accompanying GAF score of 44. AR 1038-46 (dated April 23, 2008). The other record appears to be a request for authorization from the State of Oklahoma for Plaintiff to obtain treatment with Ms. Brown. *Id.* at 1047-54. This June 14, 2010 request includes diagnoses, the assessment of a GAF score of 45, notations of a recent bout with severe anxiety, and discussions about Plaintiff's symptoms and conditions. *Id.* The ALJ did not discuss these records in the decision.

"The record must demonstrate that the ALJ considered all of the evidence . . . ." *Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). Though "an ALJ is not required to discuss every piece of evidence," he must "discuss the uncontroverted evidence he chooses not to rely upon, as well as

significantly probative evidence he rejects." *Id.* at 1009-10. Because the ALJ specifically noted the first evidence of Plaintiff's treatment with Ms. Brown was in January 2012, the ALJ did not consider the earlier evidence cited by Plaintiff.[3]

Even though the records pre-dated Plaintiff's application date, they may still be relevant. *See Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004) ("[E]ven if a doctor's medical observations regarding a claimant's allegations of disability date from earlier, previously adjudicated periods, the doctor's observations are nevertheless relevant to the claimant's medical history and should be considered by the ALJ."). Further, it would be error for the ALJ *not* to acknowledge medical evidence predating the onset date because 20 C.F.R. § 416.920(a)(3) requires the ALJ to "consider all evidence in [the] case record when [she] makes a determination or decision whether [claimant is] disabled" and the ALJ must "discuss the significantly probative evidence he rejects." *Carpenter v. Astrue*, 537 F.3d 1264, 1266 (10th Cir. 2008) (internal quotation marks and citation omitted).

---

[3] The ALJ may have meant that the first record from Family Options Community Based Counseling is from January 2012. If so, the ALJ was correct, as Ms. Brown previously was with Maximus Counseling Services. This does not salvage the ALJ's failure to acknowledge the earlier records.

Finally, the ALJ dismissed Ms. Brown's opinion at least in part because of the lack of "longitudinal perspective." AR 536. The ALJ's failure to consider the earlier evidence undermines this conclusion.

The ALJ erred by not considering all of the record evidence. On remand, the ALJ should consider the evidence contained in AR 1038-54 (Exhibit 29F) when making his decision.[4]

## B. Issues related to Plaintiff's carpal tunnel.

### 1. Handling and fingering.

Plaintiff contends the RFC should not have allowed for frequent handling and fingering. Doc. 19, at 4. "The RFC assessment is a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities." SSR 96-8p, 1996 WL 374184, at *3 (July

---

[4] The ALJ also gave greater weight to the "serial mental status exam findings and GAF scores" in the Holloway Group records than to Ms. Brown's findings in her January 2012 narrative report. AR 536. The Commissioner contends this was a good reason for discounting Ms. Brown's opinion. Doc. 25, at 23. But the ALJ found that Plaintiff was more limited than the GAF scores and treatment notes suggest based on Plaintiff's hearing testimony and the opinion of the reviewing state agency psychological consultants. AR 537. It is difficult to understand how the GAF scores in the Holloway Group records could serve as the basis for rejecting (some unspecified) portions of Ms. Brown's narrative report when the ALJ found those same GAF scores did not adequately reflect Plaintiff's limitations. On remand, if the ALJ still discounts Ms. Brown's opinion after considering all of the evidence, he should better explain which portions of Ms. Brown's narrative report he rejects and more specifically address which other medical records contradict both the narrative report and the November 2012 opinion.

9

2, 1996). It "considers only functional limitations and restrictions that result from an individual's medically determinable impairment or combination of impairments, including the impact of any related symptoms." *Id.* at *1. In determining the RFC, the ALJ considers the "relevant and other evidence" in the case record as well as "the individual's symptoms," including "the extent to which the individual's impairment-related symptoms are consistent with the evidence in the record." SSR 16-3p, 2017 WL 5180304, at *12 (Oct. 25, 2017).

Citing various portions of the record, Plaintiff contends that despite having carpal tunnel release surgery, she "still has the same problems and limitations" as shown by a positive Tinel's and Phalen's sign. Doc. 19, at 4-5. Plaintiff also speculates (without record citation) that if she attempts work requiring frequent use of her hands and arms, "she will simply re-aggravate existing conditions that are still causing problems despite surgical intervention." *Id.* at 6. Plaintiff baldly asserts that repetitive grabbing is "what causes and aggravates cubital and carpal triggers." *Id.*

The ALJ considered the records and findings cited by Plaintiff and determined that Plaintiff could frequently handle and finger. *See* AR 525-28. Plaintiff essentially asks the court to reweigh the evidence, which the court may not do. *See Terwilliger v. Comm'r, Soc. Sec. Admin.*, No. 19-1028, 2020 WL 290421, at *3 (10th Cir. Jan. 21, 2020) ("[T]o the extent [Plaintiff] contends

the ALJ erred in weighing the evidence, including that from his providers, [the court has] no authority to reweigh it.") (citing *Newbold*, 718 F.3d at 1265).

Plaintiff also argues there was not an examining or treating opinion finding that Plaintiff could perform frequent handling or fingering. Doc. 19, at 4. But, the ALJ gave great weight to a May 22, 2012 opinion from Dr. Charles K. Lee, a reviewing physician who found that Plaintiff could not perform constant handling or fingering.[5] AR 537 (citing *id.* at 360-68). Plaintiff did not contest the weight given to Dr. Lee's opinion nor did she cite any opinion in direct conflict with Dr. Lee's. Thus, this argument also functions as an improper request for the court to reweigh the evidence and reversal is not warranted on this basis.

### 2. Dr. Azadgoli's opinion.

Plaintiff also notes a medical report from Dr. Raymond Azadgoli, M.D., which she contends contained opinions inconsistent with the ability to frequently grasp items. Doc. 19, at 6. But, Plaintiff does not specify which portions of the report are inconsistent with such findings. The only specific portion of Dr. Azadgoli's report Plaintiff referenced are findings that Plaintiff

---

[5] Constant means the activity or condition exists two-thirds or more of the time. *See, e.g.*, DICOT 222.587-038, 1991 WL 672123 (routing clerk). Frequent means the activity or condition exists from one-third to two-thirds of the time. *See, e.g., id.* Thus, Dr. Lee's finding that Plaintiff could not perform constant handling or fingering is consistent with the ALJ's finding that Plaintiff could frequently perform such actions.

could effectively grasp a hammer and oppose thumb to finger to manipulate a small object. *Id.* (citing AR 1311). But, Plaintiff asserts these findings are irrelevant because they do not mean she can repetitively grab things. *Id.*

Plaintiff contends the ALJ should have explained why he did not adopt the opinion and should have discussed the weight given to Dr. Azadgoli's findings. *Id.* at 6-7. The ALJ thoroughly summarized Dr. Azadgoli's report, but to the extent the report contains opinions, the ALJ did not weigh them. *See* AR 526. But it is unclear whether any of Dr. Azadgoli's findings amount to medical opinions,[6] as the report largely recites the results of objective tests. Even if portions of the report amount to functional limitations, reversal is not warranted because the ALJ summarized the report's findings and nothing in the report contradicts the RFC finding. *See Keyes-Zachary*, 695 F.3d at 1162-63 (Where the ALJ did not "explicitly state[]" what weight he assigned to a consultative examiner's opinion, any "alleged error" was harmless because the opinion was generally consistent with the ALJ's RFC findings and Plaintiff suffered no prejudice).

---

[6] Medical opinions "reflect judgments about the nature and severity of an individual's impairment(s), including symptoms, diagnosis and prognosis, what the individual can still do despite the impairment(s), and physical and mental restrictions." SSR 06-03p, 2006 WL 2329939 at *2; *see also* 20 C.F.R. § 416.927(a)(1).

### C. Obesity.

The ALJ must consider the effects of obesity through the sequential evaluation process. *See* SSR 02-1p, 2002 WL 34686281, at *1 (Sept. 12, 2002). This Court reversed and remanded the ALJ's first decision in part because he "provided no discussion of the effect of Plaintiff's obesity, either alone, or in combination with her other impairments." *Craig v. Colvin*, 2016 WL 7974156, at *6 (W.D. Okla. Dec. 28, 2016) (AR 627), *adopted*, 2017 WL 354218 (W.D. Okla. Jan. 24, 2017)

On remand, the ALJ engaged in a more exhaustive discussion of Plaintiff's obesity throughout the sequential evaluation process. First, the ALJ found Plaintiff's obesity to be a severe impairment. AR 525. The ALJ then considered the effects of Plaintiff's obesity when determining whether her impairments met or equaled a listing:

> [Plaintiff's] obesity was evaluated under Social Security Ruling 02-1p, and it was determined that her obesity was not of such a level that it resulted in an inability to ambulate. As set out above, her gait was normal for speed, stability, and safety and she did not require any assistive devices at her consultative examinations. There is no indication of consistently abnormal gait or need for assistive device, April 2017 Brooks clinic exam notwithstanding. She has had carpal tunnel surgery bilaterally and subsequent exams have shown normal hand skills. She has been treated for problems across multiple body systems (musculoskeletal, digestive, urinary, mental). [Plaintiff] was encouraged to exercise and diet. The record does not establish that her obesity has increased the severity of coexisting or related impairments to the extent that the combination of impairments meets the severity of a listed impairment.

13

*Id.* at 532. The ALJ also discussed how obesity factored into the RFC:

> The effects of [Plaintiff's] obesity have been considered when considering the listings and in determining a [RFC] for [Plaintiff]. The overall record suggests the manipulation limitations as set forth above are warranted. [Plaintiff] has no objective findings of limited range of motion testing until April 2017; however, the [RFC] set forth above includes limitations for postural to account for the functional limitations from her combination of impairments including obesity. Moreover, the reaching and manipulation limitations and positive Phalen and Tinel's signs could likewise be related to obesity in part.
>
> * * * *
>
> The physical [RFC] takes into account [Plaintiff's] functional limitations from her combination of impairments, including obesity, as well as pain[.] She cannot perform more than reduced light exertion work due to her impairments, including obesity. Gait has been consistently noted to be normal, except for the April 2017 Brooks clinic exam, at which time [Plaintiff] received a steroid injection, and May 2017 exam showed normal gait. Subsequent exams after her knee surgery show that she has normal gait and station and negative straight leg raising test.

*Id.* at 530, 536. Further, the ALJ also gave great weight to Dr. Lee's May 22, 2012 opinion, noting that Plaintiff's "obesity and carpal tunnel syndrome were found to result in RFC for light exertion work with no constant handling and fingering bilaterally." *Id.* at 537 (internal quotation omitted).

In a perfunctory argument, Plaintiff asserts the ALJ again erred in his discussion of obesity. Doc. 19, at 9-10. In particular, she asserts the ALJ erred by finding that her gait was normal. *Id.* at 9 (citing AR 536). In support, Plaintiff cites records from the Brooks Clinic which she contends show she had

difficulty ambulating despite a finding of a normal gait during examinations in May and June 2017. *Id.* at 9 (citing AR 1414, 1417, 1422-24, 1427-28, 1433).

These May and June 2017 medical records show that the notations that Plaintiff was "positive" for difficulty ambulating fell within the section covering Plaintiff's subjective complaints.[7] AR 1422-23, 1426-27. The ALJ carefully reviewed the Brooks Clinic records, particularly the objective findings. *Id.* at 527-28. There were no objective findings noting a difficulty ambulating during those appointments. *Id.* at 1424, 1428.

The Court notes that although the ALJ did not specifically address the notation in the subjective section about ambulation, he did not ignore Plaintiff's subjective reports regarding ambulation altogether. Indeed, he included Plaintiff's report that she "can only walk 100 feet before her right knee pain stops her" when summarizing her hearing testimony. *Id.* at 535.

The ALJ considered the objective medical evidence regarding Plaintiff's gait and Plaintiff's subjective reports about her ability to walk. Thus, Plaintiff's assertion of error related to obesity amounts to little more than a request for the court to reweigh the evidence. The ALJ did not err in considering Plaintiff's obesity.

---

[7] The subjective section containing space for history of present illness, prior treatments, and a review of systems. AR 1422-23; 1426-28.

## IV. Conclusion.

Based on the above, the court reverses and remands the Commissioner's decision.

ENTERED this 9th day of March, 2020.

_____
SUZANNE MITCHELL
UNITED STATES MAGISTRATE JUDGE